[Cite as *Huntington Natl. Bank v. Hall*, 2021-Ohio-3111.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The Huntington National Bank, | : | |
| Plaintiff-Appellee, | : | No. 20AP-449 |
| | | (C.P.C. No. 17CV-4461) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Stacy L. Hall, | : | |
| Defendant-Appellant, | : | |
| Ronnie Hall et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on September 9, 2021

**On brief:** *Carlisle, McNellie, Rini, Kramer & Ulrich, Co., LPA,* and *Eric T. Deighton,* for appellee The Huntington National Bank. **Argued:** *Eric T. Deighton.*

**On brief:** *The Behal Law Group LLC,* and *John M. Gonzales,* for appellant. **Argued:** *John M. Gonzales.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Stacy L. Hall, appeals from a judgment of the Franklin County Court of Common Pleas awarding summary judgment in favor of plaintiff-appellee, The Huntington National Bank, and denying Hall's summary judgment motion. For the following reasons, we affirm.

I. Facts and Procedural History

{¶ 2} In May 2017, Huntington initiated this foreclosure action against Hall and other interested parties relating to 458 Ryan Avenue, Columbus, Ohio (the "property"). The

complaint alleged that in December 2007 Huntington (as lender) and Leeca and Gary Cooper (as borrowers) executed a personal credit line agreement secured by an open-end mortgage on the property. In connection with opening the credit line, the Coopers purchased a debt cancellation protection product from Huntington, the terms of which were set forth in the personal credit line agreement rider (the "rider"). On April 7, 2011, the Coopers deeded the property to their children, Hall and Matthew Cooper. Four days later, Leeca Cooper died. Gary Cooper died in December 2015. The complaint further alleged the loan was in default as of September 10, 2016, and Huntington was owed $28,944.86, plus interest at the rate of 4 percent per annum from the date of default. In defense of the action, Hall argued there was no outstanding balance on the personal credit line based on application of the rider. In response to Hall's argument, Huntington asserted the debt cancellation protection terminated when it canceled the personal credit line debt upon Leeca Cooper's death, and thus the debt owed upon Gary Cooper's death was not canceled.

{¶ 3} In April 2019, both Huntington and Hall moved for summary judgment. In August 2020, the trial court granted Huntington's summary judgment motion and denied Hall's summary judgment motion.

{¶ 4} Hall timely appeals.

## II. Assignment of Error

{¶ 5} Hall assigns the following error for our review:

> The trial court erred by granting appellee's motion for summary judgment and not appellant's.

## III. Discussion

{¶ 6} Hall's sole assignment of error alleges the trial court erred in granting Huntington's summary judgment motion and denying her summary judgment motion. This assignment of error is not well-taken.

{¶ 7} An appellate court reviews summary judgment under a de novo standard. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995); *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994). Summary judgment is appropriate only when the moving party demonstrates (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom

the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 8} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). However, the moving party cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims. *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997). Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. *Dresher* at 293; *Vahila* at 430; Civ.R. 56(E).

{¶ 9} In its complaint, Huntington alleged the personal credit line was in default, with $28,944.86 in principal owed, entitling Huntington to foreclose on the mortgage securing the loan. To properly support a summary judgment motion in a foreclosure action, a plaintiff must present evidentiary quality materials establishing: (1) that the plaintiff is the holder of the note and mortgage, or is a party entitled to enforce the instrument; (2) if the plaintiff is not the original mortgagee, the chain of assignments and transfers; (3) that the mortgagor is in default; (4) that all conditions precedent have been met; and (5) the amount of principal and interest due. *U.S. Bank Natl. Assn. v. Lewis*, 10th Dist. No. 18AP-550, 2019-Ohio-3014, ¶ 23. In support of its summary judgment motion, Huntington presenting the necessary evidence supporting its foreclosure claim. Hall responded by presenting evidence that, according to her, demonstrated the loan was not in default as alleged.

{¶ 10} Resolving the issue of whether the loan was in default in the amount alleged requires review of the meaning of certain provisions in the rider. The meaning of a written contract is a question of law. *State v. Fed. Ins. Co.*, 10th Dist. No. 04AP-1350, 2005-Ohio-6807, ¶ 22, citing *Long Beach Assn., Inc. v. Jones*, 82 Ohio St.3d 574, 576 (1998). The

purpose of contract construction is to realize and give effect to the parties' intent. *Skivolocki v. E. Ohio Gas Co.*, 38 Ohio St.2d 244 (1974), paragraph one of the syllabus. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. The court must read words and phrases in context and apply the rules of grammar and common usage. *Keller v. Foster Wheel Energy Corp.*, 163 Ohio App.3d 325, 2005-Ohio-4821, ¶ 14 (10th Dist.). Thus, "[c]ommon words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus.

{¶ 11} The parties disagree as to whether the rider's debt cancellation protection terminated when Huntington canceled the existing personal credit line debt upon Leeca Cooper's death in April 2011. Huntington argues that, pursuant to section 3.1.4 of the rider, the debt cancellation protection automatically terminated at that time. Conversely, Hall contends that the rider's section 5.0.1, not section 3.1.4, controlled any possible termination of the debt cancellation protection. Hall argues Huntington's cancellation of debt upon Leeca Cooper's death did not terminate the debt cancellation protection because none of the four circumstances set forth in section 5.0.1 occurred. She also generally asserts the intent of the parties was for Huntington to provide joint protection for the borrowers, and therefore the debt cancellation protection did not terminate upon the death of Leeca Cooper.

{¶ 12} The rider, which amended the personal credit line agreement between Huntington and Leeca and Gary Cooper, defines "Debt Cancellation Protection" as Huntington's "forgiveness or cancellation of all or a portion of the Minimum Monthly Payment or the Outstanding Credit Line Balance due to the occurrence of a Protected Event." (Ex. D at 1.0 Definitions, attached to Apr. 4, 2019 Pl.'s Mot. for Summ. Jgmt.) A "Protected Event" is "a defined event that initiates protection" under the rider. (Ex. D at 1.0 Definitions.) The rider identifies a borrower's terminal medical condition diagnosis or death ("Loss of Life") as a protected event. Thus, the rider provided Leeca and Gary Cooper

debt cancellation protection for a terminal medical condition diagnosis or death. Based on Leeca and Gary Cooper's deaths, Loss of Life is the protected event that is pertinent here.

{¶ 13} Sections 3.1.1 and 3.1.4 of the rider provide that "[a]fter a Loss of Life," Huntington will cancel the "Eligible Debt Amount," which is defined as the lesser of the outstanding credit line balance, or $50,000. (Ex. D.) Any amount above that remains the obligation of the deceased's estate and any surviving borrower. Section 3.1.4 of the rider further states, "Upon Debt Cancellation Protection due to Loss of Life being credited to the Outstanding Credit Balance, this Rider will terminate." (Ex. D.)[1]

{¶ 14} In contrast with sections 3.1.4 (Loss of Life protection) and 3.2.4 (terminal medical condition diagnosis protection), sections 5.0.1, 5.0.2, and 5.0.3 of the rider provide for the termination of Huntington's debt cancellation protection under circumstances that do not involve Huntington first canceling borrower debt. Sections 5.0.2 and 5.0.3 address the rights of the borrowers and Huntington to voluntarily terminate the debt cancellation protection. And section 5.0.1 provides for the automatic termination of the debt cancellation protection in four specific circumstances. This section states that, "[u]nless terminated earlier as described in sections 5.0.2 and 5.0.3 below, and subject to section 5.0.4[2]," debt cancellation protection under the rider ends for all borrowers "on the earlier of" the protection expiration date, "the pay-off and termination of Your PCL Account," the renewal or refinancing of the personal credit line, or either of the borrowers reach 66 years old. (Ex. D.)

{¶ 15} As noted above, once proper notice was provided to Huntington indicating the occurrence of a protected event, namely Leeca Cooper's death, Huntington canceled the eligible debt amount. Under the plain language of section 3.1.4, the cancellation of that debt resulted in the automatic termination of the rider. Hall contends, however, that any termination of the rider involving the elimination of existing debt on the personal line of

---

[1] Similarly, sections 3.2.1 and 3.2.4 provide that "[a]fter a Terminal Medical Condition diagnosis," Huntington will cancel the "Eligible Debt Amount," which is the lesser of the outstanding credit line balance, or $50,000. And like section 3.1.4, section 3.2.4 states: "Upon Debt Cancellation Protection due to a diagnosis of a Terminal Medical Condition being credited to the Outstanding Credit Line Balance, this Rider will terminate." (Ex. D, attached to Apr. 4, 2019 Pl.'s Mot. for Summ. Jgmt.)

[2] Section 5.0.4 provides a borrower the option to continue single coverage, upon the termination of joint debt cancellation protection, if that termination was due to age or the voluntary election of either borrower.

credit was limited to circumstances meeting the "pay-off" provision of section 5.0.1. Under the "pay-off" provision, the debt cancellation protection automatically terminates on "the pay-off and termination of Your PCL Account." (Ex. D.) Hall reasons that because the personal credit line was not terminated, the "pay-off" provision did not apply, and thus the debt cancellation protection coverage continued. But this reasoning is flawed. The "pay-off" provision addresses a circumstance that is substantively different than the circumstance addressed in section 3.1.4. As used here, to "pay-off" a debt is to pay the debt in full, and necessarily involves the transfer of money to Huntington satisfying the debt obligation. The cancellation of debt, however, does not involve the actual transfer of funds but the forgiveness of debt by the creditor. Moreover, no language in section 5.0.1 alters the meaning of section 3.1.4 or limits automatic termination to one of the four circumstances outlined in section 5.0.1. Thus, we reject Hall's contention that because section 5.0.1 did not apply, debt cancellation protection coverage continued after Huntington canceled debt based on Leeca Cooper's death.

{¶ 16} Hall also argues that the use of the term "joint debt cancellation protection" in the rider and associated disclosure documents indicated the parties' intent that debt on the personal credit line would be canceled after each borrower died. We disagree. The fact that the coverage the Coopers purchased was referred to as "joint debt cancellation protection" in the rider and accompanying disclosure documents did not alter the application of section 3.1.4. Under the terms of the rider, both borrowers were covered in the event of a borrower death or terminal medical condition diagnosis. In that sense, it was joint protection. Thus, we reject Hall's contention that, despite the plain language of section 3.1.4, the use of the term "joint debt cancellation protection" in the rider and associated disclosure documents required Huntington's continuation of debt cancellation protection coverage until Gary Cooper's death.

{¶ 17} For these reasons, we find Huntington was not required to cancel the existing debt upon Gary Cooper's death because the rider already had terminated when Huntington canceled the existing debt upon Leeca Cooper's death. Consequently, the loan was in default as alleged. Because the trial court did not err in granting Huntington's summary judgment motion and denying Hall's summary judgment motion, we overrule Hall's sole assignment of error.

## IV. Disposition

{¶ 18} Having overruled Hall's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN, P.J., and BROWN, J., concur.

————————————